IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CATHY A. WILDGEN, an unrepresented complainant individual and all other entities similarly situation, | OPINION AND ORDER CIV. NO. 04-6431-AA |

       Plaintiff,

    vs.

DERRICK E. MCGAVIC, Attorney
at Law, an enterprise affecting
interstate commerce, DERRICK
E. MCGAVIC, an individual
predicate actor involved in
schemes violating federal laws
providing that fraud and
extortion are criminal offenses,
MICHELLE L. H. ING, an
individual predicate actor
involved in schemes violating
federal laws providing that
fraud and extortion are criminal
offenses,

       Defendants.

_____

Cathy A. Wildgen
1574 Coburg Road, #183
Eugene, Oregon 97401
    Plaintiff Pro Se

Joel S. DeVore
Luvaas Cobb
777 High Street, Suite 300
Eugene, Oregon 97401
    Attorney for defendants

1 - OPINION AND ORDER

AIKEN, Judge:

## BACKGROUND

While plaintiff's ten-page amended complaint is largely incomprehensible, the court determines that plaintiff, appearing pro se, filed a RICO claim based on mail fraud and extortion against defendant lawyers. See Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

Plaintiff alleges that the defendants "alleged a claim [against plaintiff] based on the putative contract, proffered as alleged evidence of an agreement to arbitrate." Plaintiff's Amended Complaint, p. 1. Plaintiff further alleges that based on defendant lawyers "superior knowledge" of the law and "driven by avarice, prodigality, greed, and envy" selected plaintiff "as a target for swindling circa November of the year 2003." Id. Specifically, plaintiff alleges that defendants are "engaged in the debt collection fraud racket . . . a wide-spread, far-reaching scam composed of artists such as [defendants]." Id. at p. 4.

Plaintiff alleges that the "scam" works as follows:

in a back room of the Chicago Board of Trade, worthless bundles of commercial paper, in the form of copies charged off consumer debt are sold at auction or from 'debt purchasing' organizations such as Collins Financial Services, Inc.[.] The typical investment in charged of evidence of debt is six cents on the dollar[.] The typical face value of the bundles is substantial. The original makers of the loans including mortgagees are rarely harmed because the lender has often have hypothecated the laws and have risked nothing. Actors up line from such artists as [defendants] break apart the bundles and resell the worthless commercial paper in clusters based on who the original lender is and what the geographic location of the origin of the individual copies. Actors such as [defendants] are the actual 'end users,' putative

holders in due course, then end users such as [defendants] allege they are third party debt collectors attempting to collect for the original maker of the loan. Artists such as [defendants] who, for a very small investment, use threat, coercion, intimidation, and deception to defraud and extort money and property from parties such as [plaintiff]."

Id.

The "sham legal proceedings" that plaintiff alleges defendants participated in are as follows: "(1) Standing to sue in the respective state court is never proved; (2) standing to sue as a bona fide holder-in-due-course is never proved; (3) corporate charter authority to make consumer loans is never proved; (4) corporate charter authority to sue for damages on consumer loans is never proved; (5) damages in fact are never proved; and (6) delegation of authority from enterprises such as [MBNA American Bank, N.A.] to predicate actors such as [defendants] is never proved. Id. at p. 4-5.

STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. <u>Id.</u> at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>T.W. Electrical</u>, 809 F.2d at 630.

DISCUSSION

1. Defendants' Motion for Summary Judgment

To state a claim under RICO, a plaintiff must show that the conduct of an enterprise through a pattern of racketeering activity injured plaintiff's business or property. <u>Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S. 479, 496 (1985). Plaintiff alleges predicate acts of mail fraud under 18 U.S.C. § 1341. To allege a violation of mail fraud, plaintiff must show that: (1) defendants formed a scheme or artifice to defraud; (2) defendants used the U.S. mail in furtherance of the scheme; and (3) defendants did so with specific intent to deceive or defraud. <u>Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.</u>, 806 F.2d 1393, 1399-1400 (9th Cir. 1986).

Plaintiff seems to argue that defendants buy consumers' debt from creditors, who have charged off the debt, and then use

4 - OPINION AND ORDER

coercion or deception to defraud or extort money from parties such as plaintiff. Plaintiff assumes that defendants here purchased plaintiff's debt from her credit card company. Plaintiff alleges six predicate acts in support of her racketeering claim. They are: three collection letters, a letter providing debt information in response to her inquiry, a writ of garnishment, and the writ's cover letter. See Defendants' Exs. 15, 16, 17, 18, 19a, 19b, 19c, and 20. In response to defendants' interrogatory, plaintiff explains that "these communications were falsely represented to be on behalf of MBNA American Bank, n.a., when in all likelihood, [defendants] purchased evidence of the debt and utter (sic) false papers thought (sic) the mail service to defraud [plaintiff]." Defendants' Ex. 21.

Regarding the fact that she has a credit card debt and that a court has already taken final action against her, plaintiff asserts that any legal proceedings against her are "sham," due to a failure to prove standing, and her debt is "bogus" because credit card debts are "non-transferrable."

Plaintiff's claims are denied and defendants' motion for summary judgment is granted. I find no facts whatsoever in support of plaintiff's claims. On March 9, 2004, the Circuit Court of the State of Oregon for Lane County in MBNA National Bank, N.A. v. Cathy A. Wildgen, entered a final judgment on an arbitration award for plaintiff MBNA against Cathy Wildgen. The plaintiff creditor, represented by defendants here, received the judgment in their favor. That judgment was clearly a judgment in favor of no party other than MBNA National Bank, N.A. I find no

evidence to support plaintiff's theory that defendants secured a judgment in <u>their</u> favor.

The judgment was awarded by the court based on supporting documents showing an arbitration award on a credit card agreement between plaintiff and MBNA and a resulting arbitration on plaintiff's debt. Plaintiff signed an application for a MasterCard account agreeing to be bound by the credit card agreement, "including arbitration." MBNA owned the creditor's rights to plaintiff's credit card debt at its inception, at judgment, and currently. I find no evidence that defendants here have ever owned, purchased, or been assigned any creditor's rights to this debt. Therefore, none of the six predicate acts relied on by plaintiff involved any <u>false</u> representations that MBNA was the creditor because MBNA is, in fact, the creditor.

Absent two or more predicated crimes, plaintiff's claim under RICO fails. <u>See</u> 18 U.S.C. §§ 1961, 1962 (racketeering activity); <u>see also</u>, <u>All Direct Travel Services, Inc. v. Delta Air Lines, Inc.</u>, 120 Fed. Appx. 673, 2005 WL 23420 (9th Cir.), <u>cert. denied</u>, 125 S.Ct. 2548 (2005) (no extortion or mail fraud from defendants' issuance of debt memos and threat to terminate relationship if not paid; summary judgment granted when, absent predicate acts, no RICO claim possible).

Moreover, I find no evidence of any "pattern of racketeering activity." To show a "pattern," the predicate acts must be "indicative of a threat of continuing activity." A plaintiff must show more than a single fraudulent outcome involving a single victim. Here, plaintiff's allegation of a single harm to her "credit rating, her good name, and her business

6 - OPINION AND ORDER

opportunities," qualifies only as a single harm to a single "victim." This allegation is insufficient to show a pattern of racketeering activity even if this court were to accept that the six communications received by plaintiff qualified as "crimes," which this court rejects. Therefore, because plaintiff cannot show a "pattern of racketeering activity," plaintiff's claim also fails for this reason as a matter of law.

Similarly, I find no evidence of extortion here. Extortion requires obtaining property from another with his consent induced by wrongful use of . . . force, violence or fear, or under color of official right." Grauberger v. St. Francis Hospital, 169 F.Supp.2d 1172, 1178 (N.D. Cal 2001). Sending routine collection letters does not qualify as a use of force or violence. Further, defendants' actions, as private attorneys on behalf of a private corporation, are not acts of government officials. The fact that plaintiff was mailed collection letters prior to judgment or that she received a copy of a garnishment after judgment does not qualify as extortion within the meaning of the RICO statute.

Therefore, defendants' motion for summary judgment is granted as I find no disputed issues of material fact. Plaintiff's motion for summary judgment is denied.

2. Defendants' Motion for Non-Monetary Sanctions

Defendants move for non-monetary sanctions against plaintiff for plaintiff's initiation and prosecution of RICO claims against defendants. Defendants request that the court order plaintiff to provide community service "in the geographical area of the Eugene division of the court in the form of volunteer hours equal to the hours, not to exceed 40 hours, spent by defendants and their

attorney in defense of this action." Defendants suggest that plaintiff's hours be documented and approved by an officer of a non-profit organization, and that plaintiff shall "attest completion of community service, together with documentation and approval of the non-profit organization." Defendants also suggest two possible non-profit community organizations located in the Eugene area where plaintiff could serve her volunteer time.

Defendants' motion is denied although I applaud defendants' efforts at fashioning a non-monetary sanction. Plaintiff, appearing pro se, is afforded initial latitude from the court in prosecuting her lawsuit. However, the court warns plaintiff that any further attempts against these defendants, in this regard will, in fact, be met with sanctions. Defendants' summary judgment motion is granted and this lawsuit is dismissed with prejudice.

## CONCLUSION

Defendants' motion for summary judgment (doc. 16) is granted. Plaintiff's motion for summary judgment (doc. 24) is denied. Plaintiff's motions to Strike Defendants' Answer (doc. 28), to Strike Defendants' Statement of Material Facts (doc. 29) and to Strike Defendants' Affidavits (doc. 30) are denied. Finally, defendants' motion for non-monetary sanctions (doc. 37) is denied. This case is dismissed with prejudice. All pending

///
///
///
///

8 - OPINION AND ORDER

1   motions are denied as moot.

2   IT IS SO ORDERED.

3         Dated this 12 day of September 2005.

4

5

6

7                              _Ann Aiken_
                              Ann Aiken
8                      United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9 - OPINION AND ORDER